# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| COURTNEY MOTLEY, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:21-cv-02075-GMN-BNW |
| vs. ) | |
| ) | **ORDER DENYING IN PART MOTIONS** |
| S. MALTA, *et al.*, ) | **FOR SUMMARY JUDGMENT** |
| ) | |
| Defendants. ) | |
| _____ ) | |

Pending before the Court is Plaintiff's Motion for Summary Judgment ("MSJ"), (ECF No. 31), filed by Plaintiff Courtney Motley.[1]  Defendant Officers Matthew Malta and Officer Carlos Miranda ("Defendants") filed a Response, (ECF No. 32).

Also pending before the Court is Defendants' Motion for Summary Judgment, (ECF No. 38).  Plaintiff filed a Response, (ECF No. 49), to which Defendants filed a Reply, (ECF No. 50).

The Court DENIES in part Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment, because a genuine dispute of material fact exists as to every claim except the claim for failure to intervene.

## I.   BACKGROUND

This case arises from multiple incidents during which Plaintiff alleges Defendant Correctional Officers used excessive force against Plaintiff, a pretrial detainee, while he was incarcerated at Clark County Detention Center ("CCDC"). (*See generally* First Am. Compl. ("FAC"), ECF No. 3).  The relevant incidents occurred on September 17 and 18, 2021, and September 24, 2021.

---

[1] Defendant submitted his Motion *pro se* but was later appointed counsel for the submission of his Response to Defendants' Motion for Summary Judgment. (*See* Not. Att'y Appearance, ECF No. 34).

**A.  September 17-18, 2021**

**a.  Defendants' Version of the Facts**

On the evening of September 17, Officer ("Ofc.") Malta approached Plaintiff's cell on a medication pass and offered Plaintiff his medications. (Sep. 17 Incident Report, Ex. A to Defs.' MSJ, ECF No. 38-1).  Plaintiff approached the cell door holding a cup and acknowledged that he wanted to take his medication. (*Id.*).  When Ofc. Malta opened the food port, Plaintiff stuck his hand through, began to yell, and threw the cup full of liquid at Ofc. Malta, soaking his uniform. (*Id.*).  Ofc. Malta immediately closed the food port as Plaintiff said, "That's piss you bitch!" (*Id.*).  The fluid had a strong odor of urine. (*Id.*).

The following morning, Defendants felt uncomfortable delivering Plaintiff's breakfast due to his "combative behavior and threatening statements." (Sep. 18 Incident Report, Ex. B to Defs.' MSJ, ECF No. 38-2).  Defendants found Plaintiff yelling and pounding on his cell door, and told Plaintiff that if he calmed down, they would deliver his food. (*Id.*).  Shortly thereafter, a worker notified Defendants that "Motley was flooding," meaning Plaintiff was flooding his cell with toilet water. (*Id.*).; (Defs.' MSJ 3:14–15, ECF No. 38).  The officers warned Plaintiff that if he did not stop the behavior, his water would be turned off. (*Id.*).  Plaintiff did not heed the warning, so his water was turned off. (*Id.* 3:16).

**b.  Plaintiff's Version of the Facts**

Plaintiff disputes Defendant's account, arguing that he accidentally spilled his cup of water on Ofc. Malta when he reached through the food port because he was in pain from his arthritis. (FAC. at 4).  Angered by the spill, Ofc. Malta grabbed Plaintiff's arm, slammed his hand and fingers in the food trap, threatened to kill Plaintiff and his family, and said "it better not be piss[,] motherfucker." (*Id.* at 5).  Ofc. Malta again slammed Plaintiff's fingers in the food trap, causing Plaintiff to drop his medication. (*Id.*).  In Plaintiff's declaration, he states that Ofc. Miranda was standing next to Ofc. Malta when Ofc. Malta slammed his fingers in the food

trap, (Motley Decl. 2:5-6, Ex. A to Resp., ECF No. 49-1), but this information is not included in Plaintiff's FAC or Motion for Summary Judgment.

In the morning, Defendants passed by Plaintiff's cell with his food tray and ordered Plaintiff to sit in the back of his cell. (*Id.* 2:8–11). When he did so, Ofc. Malta slid the tray forcefully through the food trap, causing it to spill on the floor. (*Id.* 2:12–14). Ofc. Miranda stood next to Ofc. Malta and watched. (*Id.*). Around the same time, Plaintiff's neighbor was flooding his cell, soaking Plaintiff's floor with water and urine. (*Id.* 2:15–16). Plaintiff's food fell into the water and urine. (*Id.* 2:17). Over the next few days, Defendants continued to throw Plaintiff's food through the slot so it would fall to the ground or withhold his meals completely. (*Id.* 2:18–19).

**B. September 24, 2021**

**a. Defendants' Version of the Facts**

The next event also took place during an evening medication pass. (Sep. 24 Incident Report, Ex. C to Defs.' MSJ, ECF No. 38-3). Accompanied by a civilian nurse, Ofc. Malta asked Plaintiff if he wanted to take his medication; Plaintiff calmly agreed. (*Id.*). But when Ofc. Malta opened the food port, Plaintiff reached for the Officer's duty belt, potentially to grab a weapon. (*Id.*); (Defs.' MSJ 3:21–22). In response, Ofc. Malta closed the food port to control Plaintiff's hands and prevent injury to himself and the nurse next to him. (Sep. 24 Incident Report, Ex. C to Defs.' MSJ). Plaintiff grabbed Ofc. Malta's left wrist, damaging his watch. (*Id.*). Ofc. Miranda arrived and both Defendants attempted to get Plaintiff's hands back inside the port. (*Id.*). However, Plaintiff's hand broke free and he grabbed urine-soaked towels from his cell and threw them at Defendants through the food port. (*Id.*). Plaintiff spit at the officers and said, "I'm gonna take your taser bitch!" (*Id.*). Just as additional officers were arriving to assist, Defendants successfully pushed Plaintiff's hands back inside his cell and closed the food port. (*Id.*). Other officers placed Plaintiff in wrist restraints and escorted him away. (*Id.*).

### b. Plaintiff's Version of the Facts

By the time Ofc. Malta arrived at Plaintiff's cell for another medication pass, Plaintiff was upset that his meals had been ruined or withheld, and the parties got into a verbal altercation while the Defendants stood outside Plaintiff's cell. (Motley Decl. 2:22–23, Ex. A to Resp.). To make matters worse, Plaintiff's neighbor was again flooding his own cell, which caused Plaintiff's cell to flood with water and urine. (*Id.* 2:24–25). Plaintiff's cell became filled with towels and linens that Plaintiff used to soak up the water and urine on his floor, so while his food trap was open, Plaintiff attempted to dispose of the towels while receiving his medication. (*Id.* 2:26–3:2). Plaintiff did not purposefully throw the towels at Defendants; rather, he wanted to dispose of the towels to keep from getting sick. (FAC at 6). Because Defendants thought Plaintiff was intentionally throwing the towels at them, Defendants again tried to slam Plaintiff's fingers in the food trap. (Motley Decl. 3:3–5, Ex. A to Resp.). However, Plaintiff moved his arms further out his cell so that the door would close on his arms and not his fingers. (*Id.* 3:6–7). Once his arms were further out of the food trap door, Defendants began to punch and kick his arms. (*Id.* 3:8–9). Plaintiff kneeled down in his cell, causing his face to be exposed to the door. (*Id.*). While his face was lowered, Ofc. Miranda punched him in the face and kicked him. (*Id.* 3:10–11). Plaintiff visited the CCDC medical staff after the incident, complaining about hand and shoulder pain. (*Id.* 3:14–15).

A couple months later, Ofc. Miranda served Plaintiff his breakfast tray and asked if Plaintiff's nose and mouth were "still busted," and threatened to punch him. (*Id.* 3:24–26). Plaintiff filed for a Temporary Protective Order against Defendants because of his incident, stating that Defendants continued to harass and stalk him. (*Id.* 3:27–28).

///

///

///

1
2   ## C.  Procedural History

3       After many of Plaintiff's claims were dismissed by the Court's Screening Order, the

4   following claims remain against both Defendants, Ofcs. Malta and Miranda: (1) excessive force

5   in violation of the Fourteenth Amendment; (2) retaliation in violation of the First Amendment;

6   (3) assault; and (4) battery. (*See generally* Screening Order, ECF No. 5).  Moreover, a single

7   cause of action remains against Ofc. Miranda for failure to intervene during the first incident, in

8   violation of the Fourteenth Amendment. (*Id.*).  On August 8, 2022, Plaintiff filed a Motion for

9   Appointment of Counsel, (ECF No. 16), which the Court subsequently granted, (ECF No. 21).

10  Before Plaintiff's attorney filed a Notice of Appearance, Defendants filed their first Motion for

11  Summary Judgment on the basis that Plaintiff had not responded to their interrogatories and

12  had therefore admitted the allegations. (*See* Defs.' First MSJ, ECF No. 26).  The Court

13  exercised its discretion and extended the time for Plaintiff to respond to the interrogatories,

14  therefore denying Defendant's motion. (Order Denying First MSJ, ECF No. 30).  The parties

15  now file cross-motions for summary judgment.

16  ## II.  <u>LEGAL STANDARD</u>

17      The Federal Rules of Civil Procedure provide for summary adjudication when the

18  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

19  affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

20  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

21  may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

22  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to

23  return a verdict for the nonmoving party. *Id.*  "The amount of evidence necessary to raise a

24  genuine issue of material fact is enough 'to require a jury or judge to resolve the parties'

25  differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir.

    1983) (quoting *First Nat'l. Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary

judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship.*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations and quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

*Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.  **DISCUSSION**

The Court will first address Defendants' Motion for Summary Judgment, viewing the facts in the light most favorable to Plaintiff to determine whether there is a genuine issue of material fact.  "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court," like they are here, "the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

///

1    **A.  Federal Claims**

2    Plaintiff's remaining federal claims against both Defendants include excessive force and

3    retaliation. (*See generally* Screening Order).  Plaintiff also brings a single cause of action

4    against Ofc. Miranda for failure to intervene during the first attack. (*Id.* 6:12–7:1).

5    **i.    Excessive Force**

6    When a prison official is accused of using excessive physical force in violation of the

7    Fourteenth Amendment, the question turns on whether the defendant's use of force was

8    purposeful and knowing, and whether the force purposely or knowingly used against the

9    pretrial detainee was objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97

10   (2015).  The standard considers whether the officers' actions were objectively reasonable in

11   light of the facts and circumstances confronting them, regardless of the officer's underlying

12   intent or motive. *Id.* at 396.  Courts must balance the state's interest in maintaining order and

13   defer to practices needed to preserve order and discipline in the judgment of the officials. *Id.* at

14   397.  In determining whether the use of force was excessive, the court may consider factors

15   such as "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3)

16   the relationship between that need and the amount of force used; (4) the threat reasonably

17   perceived by the responsible officials; and (5) any efforts made to temper the severity of a

18   forceful response." *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

19   As an initial matter, Plaintiff is correct that the Court may consider his pleadings and

20   motions sworn under penalty of perjury as evidence under Rule 56.  Defendants argue Plaintiff

21   has produced no evidence to support his claims related to Defendants' use of excessive force.

22   (Defs.' MSJ 10:14–15).  But this argument is unpersuasive because verified complaints and

23   verified motions function as affidavits and may be considered as evidence if they are based on

24   personal knowledge and set forth specific facts admissible in evidence. *Schroeder v.*

25   *McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *Johnson v. Meltzer*, 134 F.3d 1393, 1399–1400

1    (9th Cir. 1998).  Plaintiff's complaint, declaration, and motion for protective order are sworn

2    and therefore act as affidavits for the Court to consider.

3           Turning to the relevant factors, Defendants argue that Plaintiff's action of throwing urine

4    posed a security threat by undermining the authority of the officers and posed a physical threat

5    due to the biohazard nature of the urine. (Defs.' MSJ 10:21–25).  They also argue that

6    Plaintiff's attempt to take Ofc. Malta's duty belt during the second incident was a serious threat

7    to health and safety. (*Id.* 11:15–17).  But these arguments require the Court to view the facts in

8    a light most favorable to Defendants, not Plaintiff.  Plaintiff denies attempting to take an object

9    from Ofc. Malta's duty belt.  Viewing the evidence in the light most favorable to Plaintiff,

10   Defendants slammed Plaintiff's arms and fingers in the food trap multiple times, and during the

11   second incident, began punching and kicking Plaintiff for disposing of the urine-soaked towels

12   in his cell.  Under those circumstances, the amount of force used by Defendants far outweighed

13   the need for force because Plaintiff was safely contained in his cell, and Defendants made no

14   efforts to temper the severity of their response.

15          Citing *Scott v. Harris*, Defendants argue that "the record so blatantly contradicts

16   Plaintiff's version of the events that a jury would not believe any of his claims," and therefore

17   this Court should not adopt Plaintiff's version of the facts. (Reply 6:3–4; 4:1–6, ECF No. 50)

18   (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Like this case, in *Scott*, plaintiff and

19   defendant offered two conflicting versions of the facts. *Id.*  However, unlike this case, there was

20   also a videotape that recorded the incident and supported the defendant's version of the events.

21   *Id.* at 378–80.  Thus, the Supreme Court concluded that "[w]hen opposing parties tell two

22   different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

23   could believe it, a court should not adopt that version of the facts for purposes of ruling on a

24   motion for summary judgment." *Id.* at 380.

25

1  Here, the parties' evidence is far less concrete than a videotape of the incident, and the
2  Court does not find that the record "blatantly contradicts" Plaintiff's account.  First, Defendants
3  provide Plaintiff's Inmate Incident History and hundreds of pages of Wellpath Mental Health
4  Records, but do not point the Court to a record relating to either September event. (Wellpath
5  Records, Exs. E, F to Defs.' MSJ, ECF Nos. 38-5–38-11); (Ex. G to Defs.' Reply, ECF No. 50-
6  1).  Second, Defendants attach Plaintiff's Judgment of Conviction in Eighth Judicial District
7  Court, in which he pled guilty to the "Unlawful Act Related to Human Excrement or Bodily
8  Fluid" related to the urine incident on September 17. (Judgment of Conviction, Ex. D to Defs.'
9  MSJ, ECF No. 38-4).  But even accepting as true that Plaintiff threw urine on Ofc. Malta, there
10 can still exist a material dispute of fact as to whether Ofc. Malta's reaction of slamming
11 Plaintiff's arms and fingers in the food trap repeatedly was necessary and reasonable, or
12 excessive force.  Third, Plaintiff attached his medical request forms, which do not appear to
13 report any injuries related to these incidents, except for a Medical Services Request form on
14 September 27 asking for a pain reliever, as well as another form in November reporting pain in
15 his arm that was "hard to lift up." (Pl.'s MSJ at 5, 9, ECF No. 31).

16 Defendants contend that Plaintiff was not a victim of excessive force because his
17 medical records do not demonstrate that he was the victim of excessive force. (Defs.' MSJ
18 11:17–24).  Although the extent of injury is one factor that the Court considers regarding the
19 excessiveness of force, an inmate can state a claim even if he did not suffer significant injury.
20 *See Wilkins v. Gaddy*, 559 U.S. 34, 36–38 (2010) (inmate who was gratuitously beaten by
21 guards did not lose his ability to pursue excessive force claim merely because he had the good
22 fortune to escape without serious injury).  Taken together, the Court disagrees with Defendants
23 that no reasonable jury could believe Plaintiff's version of the facts when compared to the
24 record.

25

Viewed in the light most favorable to the Plaintiff, the evidence describes Ofc. Malta slamming Plaintiff's arms and fingers in a food trap, and both Defendants punching and kicking his arms and face because they believed he intentionally threw urine-soaked towels at them. (Motley Decl. 2:5–6, 3:8–11, Ex. A to Resp).  When this evidence is taken as true, it raises a genuine issue of material fact as to whether Defendants purposely or knowingly used objectively unreasonable force against Plaintiff.  The Court finds that a reasonable jury could answer that question in the affirmative.  Therefore, Defendants' Motion for Summary Judgment on the excessive force claim is DENIED.

### ii.    Failure to Intervene Against Ofc. Miranda

An officer can violate an inmate's constitutional rights by failing to intervene to stop other officers from using excessive force. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).  Correctional officers "can be held liable for failing to intercede in situations where excessive force is claimed to be employed by other officers only if 'they had an opportunity to intercede.'" *Hughes v. Rodriguez*, 31 F. 4th 1211, 1223 (9th Cir. 2022) (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000)).  Plaintiff must also "show that it was objectively unreasonable for the officers not to intervene." *Sullivan v. Multnomah Cty.*, No. 19-cv-00995, 2021 WL 4248082, at *6 (D. Or. Sept. 17, 2021) (citing *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016)).

Plaintiff fails to meet his burden of producing evidence on this claim because his evidence regarding Ofc. Miranda's presence during the September 17 incident is inconsistent. Plaintiff's declaration states that when Ofc. Malta slammed Plaintiff's fingers in the food trap, Ofc. Miranda was standing next to him. (Motley Decl. 2:13–14, Ex. A to Resp.).  However, this crucial piece of detail is missing from Plaintiff's FAC as well as his Motion for Summary Judgment.  The Court's Screening Order found a colorable failure to intervene claim against Ofc. Miranda for his role in the first attack, (Screening Order 6:24–28), but upon further review

1   of the FAC, Plaintiff's statements about the Officers "nearly breaking [his] arm," appear to be

2   related to the incident on September 24, not September 17. (*See* FAC at 4).  Plaintiff attached a

3   copy of the September 17 Incident Report to his Motion for Summary Judgment, but nowhere

4   on the report does it state that Ofc. Miranda was present. (Pl.'s MSJ at 10).  Therefore, the

5   Court GRANTS Defendants' Motion for Summary Judgment on the claim of failure to

6   intervene against Ofc. Miranda.  The remaining claims against him will proceed.

7           **iii.    Retaliation**

8           Inmates have a First Amendment right to file grievances and to pursue civil rights

9   litigation. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).  Otherwise, "inmates would

10   be left with no viable mechanism to remedy prison injustices. And because purely retaliatory

11   actions taken against a prisoner for having exercised those rights necessarily undermine those

12   protections, such actions violate the Constitution quite apart from any underlying misconduct

13   they are designed to shield." *Id.*  A First Amendment retaliation claim requires: "(1) [a]n

14   assertion that a state actor took some adverse action against an inmate (2) because of (3) that

15   prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

16   Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

17   goal." *Id.* at 567–68.  The adverse action does not have to be an independent constitutional

18   violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).  And filing an inmate grievance

19   is a protected activity. *Watison v. Carter*, 668 F.3d 1108, 1114–15 (9th Cir. 2012).  In addition,

20   total chilling is not required to state a retaliation claim; it is enough if an official's acts would

21   chill or silence a person of ordinary firmness from future First Amendment activities. *Rhodes*,

22   408 F.3d at 568–69.

23           "To raise a triable issue as to motive, [a plaintiff] must offer 'either direct evidence of

24   retaliatory motive or at least one of three general types of circumstantial evidence [of that

25   motive].'" *McCollum v. Cal. Dep't Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011)

1   (alteration in original) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)).

2   Circumstantial evidence of motive may include (1) the proximity in time between the protected

3   conduct and the alleged retaliation; (2) the defendant's expressed opposition to the protected

4   conduct; and (3) other evidence showing that the defendant's reasons for the challenged action

5   were false or pretextual. *Id.*

6       In its Screening Order, the Court found that Plaintiff stated a colorable First Amendment

7   retaliation claim.  Plaintiff alleged that shortly after the first attack, he filed a grievance against

8   the Defendants for "closing the trap on [his] hand during [the] medication pass. (FAC at 7).  A

9   few days later, Ofc. Malta threw his breakfast on the ground, and one week after the attack, the

10  Officers attacked him again by punching and kicking his arms and face. (*Id.* at 6, 8).  Plaintiff's

11  declaration also states that during the week between the two incidents, the Defendants either

12  threw his food tray on the floor or completely withheld his meals. (Motley Decl. 2:18–19, Ex.

13  A to Resp.).

14      Viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could

15  find that Defendants retaliated against Plaintiff for filing grievances against them, in violation

16  of his First Amendment rights.  In their Motion for Summary Judgment, Defendants again

17  argue that there is no evidence to support these allegations. (Defs.' MSJ 13:5–13).  But as the

18  Court stated above, Plaintiff's sworn declaration, verified complaint, and verified motions are

19  evidence that the Court considers.  Plaintiff's verified FAC sufficiently alleges a close

20  proximity in time, less than a week, between his filing of a grievance and the alleged

21  retaliation.  Defendants' withholding, or intentional spilling, of Plaintiff's food does not serve a

22  legitimate correctional goal, and, of course, neither does the physical assault that occurred on

23  September 24 when Plaintiff disposed of urine-soaked towels from his cell.  Therefore, the

24  Court DENIES Defendants' Motion for Summary Judgment on the claim of retaliation.

25  ///

1

       iv.    **Qualified Immunity**

2          Having found a dispute of fact concerning Defendants' excessive force and retaliation,

3  the Court must now address Defendants' qualified immunity claim.  "Qualified immunity gives

4  government officials breathing room to make reasonable but mistaken judgments about open

5  legal questions.  When properly applied, it protects 'all but the plainly incompetent or those

6  who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting

7  *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Pearson v. Callahan*, 555 U.S. 223, 231

8  (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) ("The doctrine of qualified

9  immunity protects government officials 'from liability for civil damages insofar as their

10  conduct does not violate clearly established statutory or constitutional rights of which a

11  reasonable person would have known.'").  Thus, to overcome a claim of immunity, plaintiffs

12  must plead "facts showing (1) that the official violated a statutory or constitutional right, and

13  (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563

14  U.S. at 735.

15          As noted above, whether Defendants violated Plaintiff's constitutional rights under the

16  Fourteenth and First Amendments involves a dispute of material fact.  Turning to the second

17  prong, a right is "clearly established" when "the contours of a right are sufficiently clear that

18  every reasonable official would have understood that what he is doing violates that right." *al-*

19  *Kidd*, 563 U.S. at 741 (cleaned up).  The Supreme Court has "'repeatedly told courts . . . not to

20  define clearly established law at a high level of generality,' since doing so avoids the crucial

21  question [of] whether the official acted reasonably in the particular circumstances that he or she

22  faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (quoting *al-Kidd*, 563 U.S. at 742)

23  (internal citation omitted).  Although defeating a qualified immunity claim on summary

24  judgment does not require a case directly on point, "existing precedent must have placed the

25

statutory or constitutional question beyond debate" for a right to be clearly established. *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

 "To deny immunity, [the court] must conclude that every reasonable official would have understood, beyond debate, that the conduct was a violation of a constitutional right." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019). For purposes of qualified immunity, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Courts should ask "whether the state of the law" at the time of Defendants' conduct provided "fair warning" that their actions were unconstitutional. *Id.*

Once the defense of qualified immunity is raised by the defendant, the plaintiff bears the burden of showing that the rights allegedly violated were "clearly established." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). In his Response, Plaintiff argues that clearly established law dictates that inmates have a right to be free from excessive force. However, Plaintiff primarily cites cases involving the Eighth Amendment violation of excessive force and cites only one case involving the Fourteenth Amendment. (*See* Resp. 12:13–13:8; 12:20 n.3). Excessive force claims brought by convicted prisoners are assessed or addressed under the Eighth Amendment's Cruel and Unusual Punishment Clause, while excessive force claims brought by pretrial detainees, such as Plaintiff, are assessed or addressed under the Fourteenth Amendment's Due Process Clause. *Kingsley*, 576 U.S. at 400. The law of excessive force under the Fourteenth Amendment clearly establishes that actions taken against an inmate with the "expressed intent to punish" constitute excessive force. *Id.* at 398 (quoting *Bell,* 441 U.S. at 538).

However, Plaintiff's confusion is not fatal to his burden of proving that the right to be free from excessive force was clearly established at the time of his assaults. "[T]he Fourteenth Amendment is more protective than the Eighth Amendment 'because the Fourteenth

Amendment prohibits all punishment of pretrial detainees, while the Eighth Amendment only prevents the imposition of cruel and unusual punishment of convicted prisoners.'" *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1163–64 (9th Cir. 2020) (quoting *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004)).  The due process rights of a pretrial detainee are "at least as great" as protections provided to prisoners under the Eighth Amendment. *Glover v. Paul*, 78 F.4th 1019, 1021 (8th Cir. 2023) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  The standards of the two clauses differ, and "most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Kinglsey*, 576 U.S. at 400 (citing *Ingraham v. Wright*, 430 U.S. 651, 671–72 (1977).  The Court finds the Eighth Circuit's discussion of *Kingsley* to be informative.  The Eighth Circuit notes that in *Kingsley*, the Supreme Court held that the standard for governing a pretrial detainee's claim is "objective not subjective," and therefore only removed the subjective prong of the Fourteenth Amendment analysis. *Glover*, 77 F.4th at 1022 (citing *Kingsley*, 576 U.S. at 395). Thus, earlier authorities concluding that a use of force violated the Eighth Amendment, and was thus objectively unreasonable, "were sufficient to put an official on notice that the same use of force against a detainee would violate the Fourteenth Amendment." *Id.*

The proper question in the Court's analysis is whether it was clearly established that Plaintiff was entitled to be free from Defendants' actions of slamming his fingers and arms in the food trap, and free from being kicked and punched in his arms and face. *See Camarillo v. McCarthy*, 998 F.2d 638, 640 (9th Cir. 1993) (finding that the analysis was not whether the First Amendment was clearly established, but whether the inmate was entitled to be free from prison regulations restricting his interactions with other members of the prison population). The Court finds that the state of Fourteenth Amendment excessive force law at the time of Defendants' conduct provided the Defendants with fair warning that their actions constituted

excessive force.  Ninth Circuit case law makes clear that an officer who hits a pretrial detainee multiple times when they are not aggressive or violent to the officers, are on notice that their force is prohibited by the Fourteenth Amendment. *See e.g.*, *Atencio v. Arpaio*, 674 F. App'x 623, 625–26 (9th Cir. 2016) (determining that a reasonable officer would know that multiple strikes to the face, tasering, and a knee strike, when detainee was not resisting, violated the Constitution); *Felix v. McCarthy*, 939 F.2d 699, 701 (9th Cir. 1991) (holding that strong blows to a prisoner for no purpose can be force characterized as intentional and offensive to human dignity).

The Court also finds that the state of First Amendment retaliation law when Defendants denied Plaintiff food, and punched and kicked his face and arms, provided Defendants with fair warning that these actions violated Plaintiff's First Amendment right to file grievances.  As the Court stated above, binding law is clear that filing grievances is a protected activity. *See Watison*, 668 F.3d at 1116 (finding retaliation was sufficiently alleged with officer withheld inmate's breakfast because he filed a grievance).  Accordingly, summary judgment based on qualified immunity is DENIED.

### B.    State Law Claims: Assault and Battery

Plaintiff further brings state law claims for assault and battery against Ofc. Malta for slamming his hand in the food trap on September 17, and against both Defendants for the alleged attack on September 24. (*See* Screening Order 11:18–27).  Defendants argue that because there is no evidence that either officer used force in the alleged incidents, there is no evidence Plaintiff was put in reasonable apprehension of harm or suffered harmful contact. (Resp. 15:14–18).  But Defendants are again reminded that Plaintiff *did* present evidence, in the form of his verified FAC and motions.

"To establish an assault claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive physical contact, and (2) the victim was put in apprehension

of such contact.  To establish a battery claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive contact, and (2) such contact did occur." *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001).  Taking the facts in the light most favorable to Plaintiff, the Court finds a dispute of material fact regarding the actions of Defendants during the two alleged attacks.

Defendants also claim that they are entitled to a discretionary immunity defense to Plaintiff's state law tort claims.  Under Nevada's discretionary-function immunity statute, "no action may be brought" against a public officer "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032.  Nevada courts expressly rely upon the Federal Tort Claims Act ("FTCA") for guidance on state discretionary immunity. *Martinez v. Maruszczak*, 168 P.3d 720, 728–29 (Nev. 2007).  Borrowing from the FTCA, Nevada has adopted a two-part test to determine whether government officials are entitled to discretionary immunity. *Id.*  A decision is entitled to discretionary immunity under NRS 41.032 if the decision "(1) involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." *Id.*  In analyzing discretionary immunity, courts "must assess cases on their facts, keeping in mind Congress' purpose in enacting the exception: to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 729 (citation omitted).

Defendants do not explain the ways in which this defense applies to this case, but viewed under Plaintiff's version of the disputed facts, the defense fails. "[W]here an officer's actions are 'attributable to bad faith, immunity does not apply whether an act is discretionary or not.'" *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1168 (9th Cir. 2014) (quoting *Falline v. GNLV Corp.*, 823 P.2d 888, 891 (Nev. 1991)).  Under this rationale,

NRS 41.032 does not shield government actors from liability for intentional torts. *Franchise Tax Bd. of State of California v. Hyatt*, 407 P.3d 717, 733 (Nev. 2017).  Government officials "do not possess discretion to violate constitutional rights." *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004).

Given the disputed issues of fact in this case, the Court cannot say as a matter of law that Defendants' conduct evinced an absence of bad faith.  Because a reasonable jury could find their violation of Plaintiff's constitutional rights was so unreasonable as to amount to bad faith, Defendants are not entitled to discretionary immunity at this stage.

### C.    Punitive Damages

In the Ninth Circuit, "[i]t is well-established that a 'jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.'" *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993) (quoting *Davis v. Mason County*, 927 F.2d 1473, 1485 (9th Cir. 1991)).  Here, Defendants broadly assert that the Court should strike Plaintiff's claim for punitive damages because "there is no evidence that the officers acted with implied malice or oppression." (Defs.' MSJ 16:4–5).  The Court disagrees.  Given the disputed material facts in this case, a reasonable jury could conclude Defendants' actions were recklessly or callously indifferent to Plaintiff's rights.  The Court therefore DENIES Defendants' request to strike punitive damages.

### D.    Plaintiff's Cross-Motion for Summary Judgment

When evaluating Plaintiff's Motion for Summary Judgment, the Court must view evidence in the light most favorable to Defendants. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).  Because Plaintiff bears the burden of proof at trial, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. *See Celotex*, 477 U.S. at 323.  The Court denies Plaintiff's cross-motion because Defendants' evidence, viewed in the

light most favorable to them, raises a dispute of material fact regarding all claims except for the failure to intervene claim against Ofc. Miranda as described above.  Accordingly, Plaintiff's cross-motion for summary judgment is DENIED.

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 38), is **GRANTED in part and DENIED in part**.  Summary Judgment is granted as to the Failure to Intervene claim against Ofc. Miranda, but all other claims will proceed against both Defendants.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 31), is **DENIED**.

**IT IS FURTHER ORDERED** that within 21 days of the entry of this Order, the parties shall file a Proposed Joint Pretrial Order addressing the surviving claims of (1) excessive force in violation of the Fourteenth Amendment; (2) retaliation in violation of the First Amendment; (3) assault; and (4) battery.

**DATED** this __20__ day of November, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court