# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

COURTNEY MOTLEY,

     Plaintiff,

vs.

MATTHEW MALTA, *et al.*,

     Defendants.

Case No.: 2:21-cv-02075-GMN-BNW

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION**

On January 26, 2026, the Court presided over a bench trial in this case. (Trans. Proceedings, ECF No. 144). The trial involved the following four claims asserted by Plaintiff Courtney Motley against Defendants Matthew Malta and Carlos Miranda: (1) excessive force in violation of the Fourteenth Amendment, (2) retaliation in violation of the First Amendment, (3) assault, and (4) battery. At the bench trial, the Court heard evidence and legal argument. Now, in accordance with Federal Rule of Civil Procedure ("FRCP") 52(a), and after reviewing the entire trial record, the Court makes the following findings of fact and conclusions of law regarding Plaintiff's claims.

## **FINDINGS OF FACT**

1. At all relevant times herein, Plaintiff Courtney Motley was a pre-trial detainee being housed in the Clark County Detention Center ("CCDC").

2. At all relevant times herein, Defendant Matthew Malta was employed as a Las Vegas Metropolitan Police Department ("LVMPD"), CCDC Corrections Officer.

3. At all relevant times herein, Defendant Carlos Miranda was employed as an LVMPD, CCDC Corrections Officer.

4. On September 17, 2021, Defendant Malta and a member of the CCDC nursing staff were walking through Plaintiff's module, offering the inmates their prescribed

medications. (Malta Cross Examination); (Officer Incident Report 9/17/2021–9/18/2021 at LVMPD000108, Admitted Trial Ex. 5005).

5. As Malta and the nurse approached Plaintiff's cell, they asked him whether he wanted to take his prescribed medications. (Malta Cross Examination); (Officer Incident Report 9/17/2021–9/18/2021 at LVMPD000108, Admitted Trial Ex. 5005).

6. Plaintiff advised Malta and the nurse that he wanted to take his medications and approached the food slot (an opening in the cell door with a separate cover used to deliver food and medication to inmates) with a cup of fluid in his hands. (Malta Cross Examination); (Officer Incident Report 9/17/2021–9/18/2021 at LVMPD000108, Admitted Trial Ex. 5005).

7. Plaintiff stuck his hand out of the food slot and caused the fluid in his cup to get on Malta. (Malta Cross Examination); (Officer Incident Report 9/17/2021–9/18/2021 at LVMPD000108, Admitted Trial Ex. 5005).

8. Malta closed the food slot door while Plaintiff's hand was still through the door. (Motley Direct Examination).

9. Plaintiff suffered a cracked ring fingernail from Malta closing the foot slot door on his hand.  Plaintiff's finger was bandaged. (Motley Direct Examination).

10. The action of Malta closing the food slot door on Plaintiff's hand also caused Plaintiff to fall backward on to the floor. (Motley Direct Examination).

11. After the incident, Plaintiff submitted a Medical Services Request complaining of back pain in his tailbone on September 17, 2021.  He stated that it was hard to walk, requested pain medication, and an x-ray.  He stated that he "feel[s] like I fractured my tail bone." (Motley Well Path Records at LVMPD000411, Admitted Trial Ex. 5007).

12. On September 17, 2021, a medical professional ordered Plaintiff to rest the affected area, continue to be active with other muscles, prescribed ibuprofen, and instructed Plaintiff to file another Medical Services Request if his symptoms persisted or worsened. (Motley Well Path Records at LVMPD000411, Admitted Trial Ex. 5007).

13. Plaintiff was charged a $5.00 medication fee for the visit. (Motley Well Path Records at LVMPD000411, Admitted Trial Ex. 5007).

14. Plaintiff did not file a grievance against Malta nor Miranda.

15. On September 20, 2021, Plaintiff submitted a follow-up Medical Services Request wherein he asked to continue pain medication for his lower back pain and requested a back brace. (Motley Well Path Records at LVMPD000410, Admitted Trial Ex. 5007).

16. On September 21, 2021, the medical professional confirmed that Plaintiff's ibuprofen prescription was current. (Motley Well Path Records at LVMPD000410, Admitted Trial Ex. 5007).

17. The medical professional did not mark whether Plaintiff was charged a fee for the visit or not. (Motley Well Path Records at LVMPD000410, Admitted Trial Ex. 5007).

18. On September 24, 2021, Malta and a member of the CCDC nursing staff were walking through Plaintiff's module, offering the inmates their prescribed medications. (Malta Cross Examination); (Officer Incident Report 9/24/21 at LVMPD000115, Admitted Trial Ex. 5006).

19. Malta approached Plaintiff's cell, and asked Plaintiff if he would like to take his prescribed medications. Plaintiff indicated that he wanted to take his medications and approached the food slot door. (Malta Cross Examination); (Officer Incident Report 9/24/21 at LVMPD000115, Admitted Trial Ex. 5006).

20.  Malta then opened the food slot door and Plaintiff put his hands through the door and attempted to reach for Malta's taser on his duty belt. (Malta Direct Examination); (Malta Cross Examination); (Officer Incident Report 9/24/21 at LVMPD000115, Admitted Trial Ex. 5006).  Malta's duty belt contained a taser, module cell keys, handcuffs, pepper spray, and a radio. (Malta Cross Examination).

21.  Plaintiff stated "I'm gonna take your taser bitch!" (Officer Incident Report 9/24/21 at LVMPD000115, Admitted Trial Ex. 5006).

22.  Malta attempted to shut the food slot door to gain control of Plaintiff's hands. (Malta Direct Examination); (Officer Incident Report 9/24/21 at LVMPD000115, Admitted Trial Ex. 5006).

23.  Malta then attempted to gain control of Plaintiff's hands by grabbing Plaintiff's hands and attempting to redirect Plaintiff's hands into his cell. (Malta Cross Examination); (Officer Incident Report 9/24/21 at LVMPD000115, Admitted Trial Ex. 5006).

24.  Miranda responded to Plaintiff's cell to assist Malta. (Malta Cross Examination); (Miranda Direct Examination); (Officer Incident Report 9/24/21 at LVMPD000115, Admitted Trial Ex. 5006).

25.  Upon arriving at Plaintiff's cell, Miranda kicked the food slot door with his foot while Plaintiff's arms were through it. (Motley Direct Examination).

26.  Plaintiff then felt a pop, a sharp pain, and experienced spinal pain.  Plaintiff's shoulder became dislocated because of this action. (Motley Direct Examination).

27.  Miranda then attempted to gain control of Plaintiff's hands by grabbing Plaintiff's hands and attempting to redirect Plaintiff's hands into his cell. (Officer Incident Report 9/24/21 at LVMPD000115, Admitted Trial Ex. 5006).

28. After Plaintiff's hands were contained and in his cell, Miranda punched Plaintiff in the face, causing injury to Plaintiff's nose and mouth. (Motley Direct Examination).

29. The punch also caused Plaintiff to fall backward. (Motley Direct Examination).

30. Malta called for backup and additional officers responded to Plaintiff's cell. (Malta Direct Examination); (Malta Cross Examination); (Officer Incident Report 9/24/21 at LVMPD000115, Admitted Trial Ex. 5006).

31. A responding sergeant made Plaintiff put a face mask on and "cuff up" with handcuffs to be escorted from his cell. (Motley Direct Examination).

32. On September 27, 2021, Plaintiff submitted a Medical Services Request wherein he requested pain medication and a wheelchair. (Motley Well Path Records at LVMPD000409, Admitted Trial Ex. 5007).

33. On September 28, 2021, the medical professional prescribed Tylenol to Plaintiff, ordered an x-ray, a wheelchair, and a doctor's appointment for Plaintiff. (Motley Well Path Records at LVMPD000409, Admitted Trial Ex. 5007).

34. Plaintiff was not charged a fee for this visit. (Motley Well Path Records at LVMPD000409, Admitted Trial Ex. 5007).

35. CCDC did not preserve surveillance footage of either incident. (Motley Direct Examination); (Miranda Direct).

36. Plaintiff continues to experience pain and suffering as a result of the two incidents.

## CONCLUSIONS OF LAW

Plaintiff asserts four claims against Malta and Miranda: (1) excessive force in violation of the Fourteenth Amendment, (2) retaliation in violation of the First Amendment, (3) assault, and (4) battery. The Court analyzes each of the claims in turn.

**A. Excessive Force**

The Fourteenth Amendment applies to excessive force claims brought by pretrial detainees.  Specifically, the Supreme Court has held that "[i]t is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989).  When a prison official is accused of using excessive physical force in violation of the Fourteenth Amendment, the question turns on whether the defendant's use of force was purposeful and knowing, and whether the force purposely or knowingly used against the pretrial detainee was objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).  The standard considers whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, regardless of the officer's underlying intent or motive. *Id.* at 396.  Courts must balance the state's interest in maintaining order and defer to practices needed to preserve order and discipline in the judgment of the officials. *Id.* at 397.  The following considerations may bear on the reasonableness (or unreasonableness) of the force used: "the relationship between the need for the use of force and the amount of force used"; "the extent of the plaintiff's injury"; "any effort made by the officer to temper or to limit the amount of force"; "the severity of the security problem at issue"; "the threat reasonably perceived by the officer"; and "whether the plaintiff was actively resisting." *Id.*

Relying on *Kingsley*, Ninth Circuit Civil Jury Instruction 9.33 breaks down a Fourteenth Amendment excessive force claim into the following elements: (1) the defendant purposely or knowingly used force against the plaintiff; (2) the force used against the plaintiff was objectively unreasonable; and (3) the acts of the defendant caused harm to the plaintiff. *Ninth Cir. Model Civil Jury Instrs.* 9.33 (2025 ed.).  The Court therefore uses these elements to organize its analysis.

## 1. September 17, 2021

The Court begins by discussing whether Malta used excessive force against Plaintiff during the September 17, 2021, incident

### a. Purposely or Knowingly Used Force

Malta denies using any force against Plaintiff on this date after Plaintiff caused the fluid in his cup to get on Malta. However, Plaintiff testified that after he caused fluid to get on Malta, Malta closed the food slot door on Plaintiff's hand, which caused him to suffer a cracked nail on his ring finger and to fall backwards, causing injury to his tailbone. The Court credits Plaintiff's testimony because Defense did not offer any evidence or testimony to rebut Plaintiff's testimony that his finger was injured, and Plaintiff's tailbone injury is plainly supported by his medical records. Indeed, on the same day of the incident, Plaintiff submitted a Medical Services Request complaining of back pain in his tailbone. (Motley Well Path Records at LVMPD000411, Admitted Trial Ex. 5007). The finger injury Plaintiff testified to, and the tailbone injury the record corroborates, support his testimony that Malta used force against him. Thus, Plaintiff proves by a preponderance of the evidence that Malta purposely and knowingly used force on Plaintiff when he closed the food slot door on Plaintiff's hand which caused him to fall backwards.

### b. Objectively Unreasonable Force

The Court addresses the *Kingsley* factors in turn.

#### i. Relationship Between the Need for the Use of Force and the Amount of Force Used

The Court begins by analyzing the relationship between the need for the use of force and the amount of force used. The Court finds that there was no need for Malta to close the food slot door on Plaintiff's hand after Plaintiff caused a fluid to get on Malta. To begin, closing the food slot door on Plaintiff's hand amounts to some amount of force. This amount of force was

not needed because the act of Plaintiff causing a fluid to get on Malta had already been completed.  Moreover, if the fluid was water, then the situation could have been wholly addressed through administrative action without the need for any force.  Similarly, even if the fluid in the cup was urine, the situation could have been wholly addressed through either administrative action or criminal prosecution.[1]  Thus, this factor weighs in favor of the force being unreasonable.

### ii.    Extent of Plaintiff's Injuries

The Court next determines the extent of Plaintiff's injuries.  Plaintiff testified that he suffered from a cracked nail on his ring finger and a tailbone fracture which made it difficult for him to walk after the incident.  The Court credits Plaintiff's testimony regarding his finger injury for the reasons discussed above.  Further, although the evidence before the Court does not confirm that Plaintiff suffered a tailbone fracture, it does confirm that Plaintiff suffered a tailbone injury and faced difficulty walking as a result of the accident.  Indeed, Plaintiff submitted a Medical Services Request complaining of back pain in his tailbone on September 17, 2021. (Motley Well Path Records at LVMPD000411, Admitted Trial Ex. 5007).  He stated that it was hard to walk, requested pain medication, and an x-ray. (*Id.*).  He stated that he "feel[s] like I fractured my tail bone." (*Id.*).  The medical professional ordered Plaintiff to rest the affected area, continue to be active with other muscles, prescribed ibuprofen, and instructed Plaintiff to file another Medical Services Request if his symptoms persisted or worsened. (*Id.*).  Three days later, Plaintiff submitted a follow-up Medical Services Request wherein he asked to continue pain medication for his lower back pain and requested a back brace. (*Id.* at LVMPD000410).  The medical professional confirmed that Plaintiff's ibuprofen prescription was still current. (*Id.*).  Plaintiff also testified that he presently suffers from lower back pain

---

[1] To further prove this point, Plaintiff was in fact charged with an unlawful act related to human excrement or bodily fluid in violation of NRS 212.189. (Decl. of Arrest at LVMPD000102, Trial Ex. 5005).

which the Court credits.  Plaintiff's continued suffering, 4.5 years later, further bolsters the Court's finding that Plaintiff's injuries are extensive.

Based on Plaintiff's testimony at trial and the record before the Court, the Court finds that Plaintiff suffered from extensive injuries.  This factor therefore weighs in favor of finding that the force used was unreasonable.

### iii.   Defendant's Effort to Temper or Limit

The Court next considers the effort made by Malta to temper or to limit the amount of force.  During Plaintiff's direct examination, he recounted the September 17, 2021, incident in detail, but there was no testimony regarding the efforts Malta made to temper or limit the amount of force used.  During Malta's direct and cross examination, he testified that he did not use any force on Plaintiff and that Plaintiff's hands were completely inside the cell when he closed the food slot door.  Malta's testimony was also devoid of any recount of the efforts he made to temper or limit the amount of force.  Malta's denial of using force cuts against his credibility as a witness and by denying that he used force he fails to provide mitigation testimony to justify the amount of force that was used or to explain any efforts he made to temper.  Moreover, the fact that CCDC did not preserve surveillance footage of this incident, even after they pursued criminal charges against Plaintiff under NRS 212.189, further cuts against Malta's credibility.  But because it is ultimately Plaintiff's burden to prove his claim by a preponderance of the evidence, the Court finds that this factor is neutral in determining whether the force was unreasonable.

### iv.   Severity of Security Problem

Next the Court considers the severity of the security problem at issue.  If the fluid in Plaintiff's cup was urine, the fluid getting on Malta may have given rise to a health hazard, but it was not a security problem.  And water getting on Malta is likewise not a security problem.  Thus, the fluid that Plaintiff caused to get on Malta did not pose a security problem regardless

of whether the fluid was water or urine. Because no security problem existed, this factor weighs in favor of finding that the force was unreasonable.

### v.  Threat Reasonably Perceived by Defendant

The Court next considers the threat reasonably perceived by Malta. Malta testified that Plaintiff intentionally threw fluid on him. Malta testified that Plaintiff then yelled, "That's piss you bitch," which is corroborated by the record. (*See* Officer Incident Report 9/17/2021–9/18/2021 at LVMPD000108, Admitted Trial Ex. 5005). But even if the fluid was urine, based on Malta's testimony and the incident report, he quickly realized that the fluid in the cup was urine. The Court finds that urine getting on Malta is a threat, because of the health concerns posed by contact with bodily fluids. However, Malta testified that Plaintiff retreated into his cell after Plaintiff caused the fluid to get on Malta and Plaintiff testified that Malta closed the food slot door on Plaintiff's hand immediately after. Thus, by either account, Malta could not have reasonably believed the threat continued beyond the single instance of the fluid getting on Malta. This factor therefore weighs in favor of finding the force used was unreasonable.

### vi.  Whether Plaintiff was Actively Resisting

Lastly, the Court addresses whether Plaintiff was actively resisting. Plaintiff testified on direct examination that his hand was through the food slot door when Malta closed the door on Plaintiff's hand. There was no testimony elicited that Plaintiff was resisting. Plaintiff's testimony regarding the injury he sustained to his ring finger is consistent with his testimony that his hand was through the door when Malta closed the door on it, meaning Plaintiff did not have the opportunity to resist before the food slot door was closed on his hand. Malta, who denies he used any force against Plaintiff, testified that Plaintiff immediately retreated into his cell after causing fluid to get on Malta, which is further evidence supporting a finding that Plaintiff was not resisting. Because Plaintiff was not resisting at the time the force was used, the Court finds that this factor weighs in favor of finding the force was unreasonable.

In sum, and after careful consideration of the factors, the Court finds that Plaintiff proves by a preponderance of the evidence that Malta's use of force was objectively unreasonable.

### c.  Harm

As stated above in greater detail, Plaintiff testified that he suffered from an injured fingernail and tailbone, which the Court credits because the record and testimony support such a finding.  Defense did not offer any rebuttal to explain an alternative theory for Plaintiff's claimed injuries.  Plaintiff therefore proves by a preponderance of the evidence that he was harmed, because the act of Malta closing the food slot door on Plaintiff's hand caused Plaintiff an injury to his fingernail and his tailbone when he fell backwards.

In sum, Plaintiff proves by a preponderance of the evidence that Malta used excessive force against Plaintiff in violation of the Fourteenth Amendment on September 17, 2021.

### 2.  September 24, 2021

The Court now turns to whether Malta and/or Miranda used excessive force against Plaintiff in violation of the Fourteenth Amendment during the September 24, 2021, incident.

### a.  Purposely or Knowingly Used Force

Malta and Miranda both testified to using force against Plaintiff during the September 24, 2021, incident to get Plaintiff's arms off and away from Malta's duty belt containing a taser and other items and back into his cell.  Thus, Plaintiff proves by a preponderance of the evidence that both Malta and Miranda purposely and knowingly used force on Plaintiff.

### b.  Objectively Unreasonable Force

The Court addresses each *Kingsley* factor in turn.

#### i.  Relationship Between the Need for the Use of Force and the Amount of Force Used

The Court begins by analyzing the relationship between the need for the use of force and the amount of force used by Malta and Miranda individually.  During medication pass on

September 24, 2021, Malta testified that he approached Plaintiff's cell to assist the nurse with giving Plaintiff his medication. Malta testified that Plaintiff was calm when Malta and the nurse approached Plaintiff's cell. Malta testified that he opened the food slot door to administer Plaintiff's medications to him and Plaintiff stuck both of his hands through the food slot door. Malta testified that Plaintiff next reached for Malta's hand with one hand and Malta's taser attached to his duty belt with his other hand. The belt contained Malta's taser, handcuffs, module cell keys, pepper spray, and a radio. Malta testified that he tried to close the food slot door to protect himself and the nurse. When that was unsuccessful, Malta then tried to gain control of Plaintiff's hands to get Plaintiff's hands away from his belt, and back through the cell door. Malta testified that Miranda responded to the cell and tried to help Malta redirect Plaintiff's hands back into the cell. Malta was able to call for more officers with the radio on his shoulder. Malta's testimony is consistent with the incident report that he filled out after the incident. (Officer Incident Report 9/24/21 at LVMPD000115, Admitted Trial Ex. 5006). The Court credits Malta's testimony here and finds that Malta used minimal force in a situation where the force used was needed.

Miranda testified that he was sitting at his desk and heard the incident between Malta and Plaintiff. Miranda testified that he responded to Plaintiff's cell and grabbed Plaintiff's hands to redirect them away from Malta's belt and tried to push them back into the cell through the food slot door. However, Plaintiff testified that when Miranda responded to his cell, he kicked the foot slot door with his foot. Plaintiff felt a pop, a sharp pain, and experienced spinal pain. Plaintiff later testified that his shoulder became dislocated as a result of this incident. Plaintiff also testified that Miranda then bent down, stuck his arm through the food slot door and punched Plaintiff in the face causing injury to his lip and nose. The punch also caused Plaintiff to fall backward.

Although Miranda denies kicking the food slot door and punching Plaintiff, the Court credits Plaintiff's testimony regarding Miranda's actions.  Plaintiff testified that when other officers responded to the incident, a sergeant asked Plaintiff to put a face mask on because Miranda reported Plaintiff was spitting.  Plaintiff testified that while the sergeant asked for Plaintiff to put the face mask on, the sergeant noticed the blood coming from Plaintiff's nose.  This is consistent with Plaintiff's testimony that Miranda punched him in the face.

Moreover, Plaintiff testified that the sergeant made him "cuff up" after the incident but Plaintiff had a hard time putting his hands behind his back to cuff up and had to force his hands behind his back.  This line of testimony is consistent with his testimony that he suffered from a dislocated shoulder.  Plaintiff further testified that it was hard to walk directly after the incident, which is consistent with his testimony that he fell backward after Miranda punched him.  Plaintiff's medical records further corroborate his testimony that he fell backwards and struggled to walk because on September 27, 2021, Plaintiff submitted a Medical Services Request wherein he requested pain medication and a wheelchair. (Motley Well Path Records at LVMPD000409, Admitted Trial Ex. 5007).  The medical professional prescribed Tylenol to Plaintiff, ordered an x-ray, a wheelchair, and a doctor's appointment for Plaintiff. (*Id.*).

The Court credits Plaintiff's testimony regarding the actions Miranda took for the preceding reasons.  Moreover, the fact that CCDC did not preserve surveillance footage of this incident cuts against Miranda's credibility.  The Court therefore finds that the force Miranda used in an attempt to stop Plaintiff from accessing the items on Malta's belt, by kicking the food slot door was comparable to the need for the use of force due to the security problem posed by Plaintiff attempting to gain access to those items, but once Plaintiff was no longer touching Malta's belt or accessories, the use of force to punch Plaintiff was unnecessary.

In sum, the relationship between the need for the force used and the amount of force used by Malta weighs against the force being unreasonable.  However, the relationship between

the need for the force used and the amount of force used by Miranda weighs heavily in favor of the force being unreasonable.

### ii.     Extent of Plaintiff's Injuries

Next the Court determines the extent of Plaintiff's injuries.  Plaintiff testified that he suffered from a dislocated shoulder, specifically a hill sack lesion.  This line of testimony is consistent with Plaintiff's testimony that Miranda kicked the food slot door while Plaintiff's arm was through it.  Plaintiff also testified that he suffered from a busted nose and lip because of Miranda punching him in the face.  This line of testimony is consistent with Plaintiff's line of testimony regarding the sergeant's response, as discussed above.  These are serious injuries and Plaintiff testified that his arm still pops out of place 4.5 years later.  Thus, the extent of Plaintiff's injuries, caused by Miranda, weighs in favor of Miranda's use of force being unreasonable.  However, this factor weighs against Malta's use of force being unreasonable, because the injuries are not attributable to him.

### iii.     Defendants' Effort to Temper or Limit

Malta testified that he tried to use his hands to get Plaintiff's hands back into his cell before more force was used.  Miranda testified that he and Malta told Plaintiff to put his hands back into the cell, but Plaintiff refused.  It is unclear from the testimony whether Miranda asked Plaintiff to put his hands back into the cell before or after he kicked Plaintiff's food slot door.  But based on Plaintiff's testimony regarding Miranda's actions, which the Court credits, it is more likely than not that Miranda's effort to temper occurred after Miranda kicked the food slot door and before Plaintiff's hands were contained.  The record is devoid of any further evidence of tempering or limiting the amount of force used—specifically there is no evidence that Miranda limited the amount of force used after Plaintiff's hands were contained and before he punched Plaintiff in the face.  Thus, Malta's efforts to temper or limit the amount of force used

weighs against a finding that the use of force was unreasonable, but Miranda's weighs in favor of finding the force used was unreasonable.

### iv.    Severity of Security Problem

Next the Court considers the severity of the security problem at issue. Malta testified that Plaintiff yelled "I'm gonna take your taser bitch!" and grabbed at his belt that contained a taser, cell keys, and pepper spray among other items. This is clearly a very severe security problem because Defendants must maintain the security of their assigned module, and an inmate with access to keys, a taser, and pepper spray decreases the module's security. Thus, this factor weighs against both Defendants' use of force being unreasonable.

### v.    Threat Reasonably Perceived by Defendants

The threat reasonably perceived by Defendants was high. Defendants and/or others could have been incapacitated if Plaintiff gained access to Malta's taser or pepper spray. This factor therefore weighs against finding the force used by both Defendants was unreasonable.

### vi.    Whether Plaintiff was Actively Resisting

Malta and Miranda testified that Plaintiff was resisting, which the Court partially credits. Indeed, Plaintiff was resisting initially, but he was not resisting when Miranda punched him in the face. This factor therefore weighs against finding the force used by Malta was unreasonable. But this factor weighs heavily in favor of finding the force used by Miranda was unreasonable.

In sum, Plaintiff fails to prove by a preponderance of the evidence that the use of force by Malta was objectively unreasonable. However, after careful consideration and a weighing of the factors, particularly the factors that heavily weigh in favor of an unreasonableness finding, the Court finds that Plaintiff proves by a preponderance of the evidence that Miranda's use of force was objectively unreasonable.

**c. Harm**

As stated above, Plaintiff testified that Miranda caused him to suffer from a dislocated shoulder and busted nose and lip.  As explained in more detail above, the Court credits Plaintiff's testimony regarding the harm he suffered.  Defense did not offer any rebuttal to explain an alternative theory for Plaintiff's alleged injuries.  Plaintiff therefore proves by a preponderance of the evidence that the act of Miranda kicking the food slot door while Plaintiff's arm was sticking out of it caused Plaintiff to suffer a dislocated shoulder.  Plaintiff also proves by a preponderance of the evidence that the act of Miranda punching Plaintiff in the face caused Plaintiff to suffer a busted nose and lip.

In sum, Plaintiff proves by a preponderance of the evidence that Miranda used excessive force against Plaintiff in violation of the Fourteenth Amendment on September 24, 2021.  However, Plaintiff fails to meet his burden of proving by a preponderance of the evidence that Malta violated his Fourteenth Amendment rights on September 24, 2021.

**B. Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *accord Bird v. Dzurenda*, 131 F.4th 787, 790 (9th Cir. 2025) (identifying same elements).

Here, Plaintiff fails to prove by a preponderance of the evidence that he engaged in conduct protected under the First Amendment.  While the filing of grievances against prison officials is a protected activity, *Rhodes*, 408 F.3d at 567–68, Plaintiff fails to establish by a preponderance of the evidence that he filed such a grievance.  Plaintiff testified on direct examination that a nurse provided him an emergency paper grievance that he filled out

following the September 17, 2021, incident. He then testified that he placed the grievance on his cell door, but the grievance disappeared. Plaintiff testified that he does not know what happened to the paper grievance. The record is devoid of any evidence or testimony that Plaintiff handed the paper grievance to a proper individual or otherwise filed the grievance. Plaintiff therefore fails to prove by a preponderance of the evidence that the paper grievance was in fact filed. Accordingly, Plaintiff fails to prove by a preponderance of the evidence that he engaged in conduct protected under the First Amendment. Plaintiff thus fails to prove by a preponderance of the evidence that Malta and Miranda are liable for retaliation in violation of the First Amendment.[2]

### C. Assault & Battery

To succeed on an assault claim, a plaintiff must demonstrate that the defendant: (1) intended to cause harmful or offensive physical contact; and (2) the victim was put in apprehension of such contact. *Sandoval v. Las Vegas Metro. Police Dep't*, 854 F. Supp. 2d 860, 882 (D. Nev. 2012) (citing Restatement (Second) of Torts, § 21 (1965), *aff'd in part, rev'd in part on other grounds*, 756 F.3d 1154 (9th Cir. 2014)). To succeed on a battery claim, a plaintiff must demonstrate that the defendant: (1) intended to cause harmful or offensive contact; and (2) such contact occurred. *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001) (citing Restatement (Second) of Torts §§ 13, 18 (1965)). In Nevada, police officers are privileged to use the amount of force reasonably necessary. *See Yada v. Simpson*, 913 P.2d 1261, 1262 (Nev. 1996), *superseded by statute on other grounds as recognized by RTTC Commc'n, LLC v. Saratoga Flier, Inc.*, 110 P.3d 24, 29 (Nev. 2005). Officers are "liable for battery to the extent they use more force than is reasonably necessary." *Gordon v. Las Vegas Metro. Police Dep't*, No. 2:13-cv-01095-GMN-GWF, 2015 WL 5344549, at *11 (D. Nev. Sept.

---

[2] The Court need not address the remaining elements of the retaliation claim. But the Court notes, for the record, that the evidence supports a finding that Plaintiff's water was turned off by Malta or Miranda on September 18, 2021, and was not turned back on until eight days later.

14, 2015); *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996) (applying Nevada law); *see Yada*, 913 P.2d at 1262.

"Like an excessive force claim, battery and assault claims against police officers also require proof of unreasonable force." *J.D.H. v. Las Vegas Metro. Police Dep't*, No. 2:13-cv-01300-APG-NJK, 2014 WL 3809131, at *7 (D. Nev Aug. 1, 2014); *see also Ramirez*, 925 F. Supp. at 691 ("The standard for common-law assault and battery by a police officer thus mirrors the federal civil rights law standard. . . ."). Therefore, because Malta used excessive force against Plaintiff on September 17, 2021, Plaintiff proves by a preponderance of the evidence that Malta is likewise liable for assault and battery for the incident that occurred on the same date. Moreover, because Miranda used excessive force against Plaintiff on September 24, 2021, Plaintiff proves by a preponderance of the evidence that Miranda is liable for assault and battery for the incident that occurred on September 24, 2021. Finally, because Plaintiff fails to prove by a preponderance of the evidence that Malta used excessive force against him on September 24, 2021, he therefore fails to prove by a preponderance of the evidence that Malta is liable for assault and battery for the incident that occurred on the same date.

### D. Overall Claims Conclusion

The Court now summarizes the claims each Defendant is and is not liable for.

#### 1. Defendant Malta

For the reasons discussed above, Plaintiff proves by a preponderance of the evidence that Malta is liable for excessive force in violation of the Fourteenth Amendment based on the September 17, 2021, incident. Plaintiff also proves by a preponderance of the evidence that Malta is liable for assault and battery for the September 17, 2021, incident.

Plaintiff fails to prove by a preponderance of the evidence, and thus Malta is not liable for, the following claims: retaliation in violation of the First Amendment, excessive force in

violation of the Fourteenth Amendment for the September 24, 2021, incident, and assault and battery based on the September 24, 2021, incident.

### 2. Defendant Miranda

For the reasons discussed above, Plaintiff proves by a preponderance of the evidence that Miranda is liable for excessive force in violation of the Fourteenth Amendment based on the September 24, 2021. incident.  Plaintiff also proves by a preponderance of the evidence that Miranda is liable for assault and battery for the September 24, 2021, incident.

Plaintiff fails to prove by a preponderance of the evidence, and thus Miranda is not liable for, retaliation in violation of the First Amendment.

### E.  Damages

Now the Court must ascertain the damages that each Defendant is liable for.  Plaintiff moves for compensatory and punitive damages.

### 1.  Excessive Force in Violation of Fourteenth Amendment

The Court begins with compensatory damages before turning to punitive damages for Plaintiff's excessive force claim.

### a. Compensatory Damages

Plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate Plaintiff for any injury that was caused by Malta as it relates to the September 17, 2021, incident, and by Miranda as it relates to the September 24, 2021, incident.  In determining the measure of damages, the Court considers the following: (1) the reasonable value of necessary medical care, treatment, and services received to the present time; (2) the nature and extent of the injuries; and (3) the mental, physical, and emotional pain and suffering experienced.

The Court begins with the reasonable value of necessary medical care, treatment, and services Plaintiff received as a result of the incidents.  After the September 17, 2021, incident,

Plaintiff submitted a Medical Services Request complaining of back pain in his tailbone. Plaintiff was charged a $5.00 medication fee for the visit. (Motley Well Path Records at LVMPD000411, Admitted Trial Ex. 5007). Plaintiff therefore proves by a preponderance of the evidence that he incurred $5 in medical expenses as a result of the September 17, 2021, incident for which Malta is liable for. The record is devoid, however, of any evidence that Plaintiff incurred medical expenses as a result of the September 24, 2021, incident.

The Court next addresses the nature and extent of the injuries. As described above, the Court finds that Plaintiff's injuries are extensive. He suffered from an injured fingernail and injured tailbone as a result of the September 17, 2021, incident, and a dislocated shoulder and busted nose/lip as a result of the September 24, 2021, incident.

The Court now turns to the mental, physical, and emotional pain and suffering endured by Plaintiff. With respect to the September 17, 2021, incident, Plaintiff testified that he suffered a cracked ring fingernail. Moreover, Plaintiff submitted a Medical Services Request complaining of back pain in his tailbone on September 17, 2021. (Motley Well Path Records at LVMPD000411, Admitted Trial Ex. 5007). He stated that it was hard to walk, requested pain medication, and an x-ray. (*Id.*). He stated that he "feel[s] like I fractured my tail bone." (*Id.*). The medical professional ordered Plaintiff to rest the affected area, continue to be active with other muscles, prescribed ibuprofen, and instructed Plaintiff to file another Medical Services Request if his symptoms persisted or worsened. (*Id.*). Three days later, Plaintiff submitted a follow-up Medical Services Request wherein he asked to continue pain medication for his lower back pain and requested a back brace. (*Id.* at LVMPD000410). The medical professional confirmed that Plaintiff's ibuprofen prescription was still current. (*Id.*). Moreover, Plaintiff testified that he still experiences back pain when he sits, uses the restroom, or stands for long periods of time as a result of the September 17, 2021, incident. During the trial, Plaintiff exhibited signs of continued mental and emotional suffering over the incident. Based on a

preponderance of the evidence, the Court finds that $10,000 will reasonably compensate Plaintiff for the mental, physical, and emotional pain and suffering he endured.

With respect to the September 24, 2021, incident, Plaintiff testified that when Miranda responded to his cell, he kicked the foot slot door with his foot. Plaintiff then felt a pop, a sharp pain, and experienced spinal pain. Plaintiff later testified that his shoulder became dislocated as a result of this incident. Plaintiff also testified that Miranda punched Plaintiff in the face causing injury to his lip and nose. The punch also caused Plaintiff to fall backward. Moreover, Plaintiff testified that it was hard for him to "cuff up" after the incident because of his dislocated shoulder. Plaintiff further testified that it was hard to walk directly after the incident. Because of this incident, on September 27, 2021, Plaintiff submitted a Medical Services Request wherein he requested pain medication and a wheelchair. (Motley Well Path Records at LVMPD000409, Admitted Trial Ex. 5007). The medical professional prescribed Tylenol to Plaintiff, ordered an x-ray, a wheelchair, and a doctor's appointment for Plaintiff. (*Id.*). Moreover, Plaintiff testified that, as of the date of the trial, his arm continues to pop out of place, particularly at night, and it is hard for him to lift weights, and he can no longer do pull ups. During the trial, Plaintiff exhibited signs of continued mental and emotional suffering over the incident. Based on the preponderance of the evidence, the Court finds that $10,000 will reasonably compensate Plaintiff for the mental, physical, and emotional pain and suffering he endured.

In sum, the Court finds that, based on a preponderance of the evidence, Malta is liable to Plaintiff for $10,005 to reasonably and fairly compensate Plaintiff for damages he incurred as a result of the excessive force used against him on September 17, 2021. The Court further finds that based on a preponderance of the evidence, Miranda is liable to Plaintiff for $10,000 to reasonably and fairly compensate Plaintiff for damages he incurred as a result of the excessive force used against him on September 24, 2021.

### b. Punitive Damages

Next the Court determines punitive damages.  The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).  The Court does not award punitive damages to compensate Plaintiff.  Indeed, the Court only awards punitive damages here because "defendant[s'] culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *Id.*

To be awarded punitive damages, Plaintiff must prove by a preponderance of the evidence[3] that Malta and/or Miranda's conduct that harmed Plaintiff was malicious, oppressive, or in reckless disregard of Plaintiff's rights. *Ninth Cir. Model Civil Jury Instrs.* 5.5 (2025 ed.).  Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring Plaintiff. *Id.*  Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. *Id.*  An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff. *Id.*

Here, Plaintiff proves by a preponderance of the evidence that Malta's conduct that caused Plaintiff harm on September 17, 2021, was malicious.  The Court finds that Malta acted with ill will towards Plaintiff when he closed the food slot door on Plaintiff's hand causing him

---

[3] The preponderance of the evidence standard has been upheld for punitive damages in certain federal claims. *See, e.g.*, *In re Exxon Valdez*, 270 F.3d 1215, 1232 (9th Cir. 2001) (holding that preponderance standard applied to punitive damages claim in maritime case (citing *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 n.11 (1991)); *Costa v. Desert Palace, Inc.*, 299 F.3d 838 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003) (Title VII); *Brummett v. Martinez*, No. 1:21-CV-00086-BAM (PC), 2024 WL 3818975, at *4 (E.D. Cal. Aug. 14, 2024) (First Amendment Retaliation).

to fall backward and injure his tailbone because the purpose for closing the food slot door was because Plaintiff caused fluid to get on Malta. Malta's actions were to punish Plaintiff, not to preserve order and discipline.

Moreover, Plaintiff proves by a preponderance of the evidence that Miranda's conduct that caused Plaintiff harm on September 24, 2021, was malicious. Miranda punched Plaintiff after the perceived threat had already ended. This act can only be viewed as one of ill will and with the intention to injure Plaintiff.

The Court decides that punitive damages in the amount of $5,000 for each incident—the September 17, 2021, incident for which Malta is liable, and the September 24, 2021, incident for which Miranda is liable—is sufficient to fulfill the punitive damages purposes.

### 2. Assault & Battery

The Nevada Supreme Court has explained that "when a plaintiff asserts claims under different legal theories [for the same conduct], 'he or she is not entitled to a separate compensatory damage award under each legal theory.'" *Elyousef v. O'Reilly & Ferrario, LLC*, 245 P.3d 547, 549 (Nev. 2010) (quoting *Grosjean v. Imperial Palace, Inc.*, 212 P.3d 1068, 1084 (Nev. 2009) (barring a plaintiff's state law tort claim when the plaintiff had already recovered for the same injuries on a federal § 1983 claim)). Rather, "the plaintiff is entitled to only one compensatory damage award on one or both theories of liability." *Id.* Thus, because the Court awards Plaintiff compensatory damages under his Fourteenth Amendment excessive force claim, the Court cannot award Plaintiff compensatory damages for the assault and battery claims because they arise out of the same conduct. The Court will also not award punitive damages twice.

## ORDER

Now, therefore, based upon the foregoing Findings of Fact and Conclusions of Law,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Plaintiff established by a preponderance of the evidence that Malta is liable for excessive force in violation of the Fourteenth Amendment based on the September 17, 2021, incident.  Plaintiff also proved by a preponderance of the evidence that Malta is liable for assault and battery for the September 17, 2021, incident.  Furthermore, Plaintiff proved by a preponderance of the evidence that Miranda is liable for excessive force in violation of the Fourteenth Amendment based on the September 24, 2021, incident.  Plaintiff also proved by a preponderance of the evidence that Miranda is liable for assault and battery for the September 24, 2021, incident.

**IT IS FURTHER ORDERED, ADJUDGED, and DECREED** that Defendant Malta is liable to Plaintiff for the following damages:

Compensatory: $10,005

Punitive: $5,000

Total: $15,005

**IT IS FURTHER ORDERED, ADJUDGED, and DECREED** that Defendant Miranda is liable to Plaintiff for the following damages:

Compensatory: $10,000

Punitive: $5,000

Total: $15,000

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Plaintiff failed to prove by a preponderance of the evidence that Malta and Miranda are liable for retaliation in violation of the First Amendment.  Plaintiff also failed to prove by a preponderance of the evidence that Malta is liable for excessive force in violation of the Fourteenth Amendment for the September 24, 2021, incident, and assault and battery based on the same date.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion for Damages, (ECF No. 137), is **DENIED as moot**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion for Transcripts and/or Case Summary, (ECF No. 148), is **DENIED** without prejudice.  Upon receiving this Order, Plaintiff may re-file his motion if he so desires, but the Court notes that there are no transcripts in this case.

**IT IS SO ORDERED.**

**DATED** this ___25___ day of February, 2026.

_____

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT